(C.D. 2274)

R. J. SAUNDERS & CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided July 11, 1961)

*Jordan & Klingaman* (*Edward F. Jordan* of counsel) for the plaintiff.
*William H. Orrick, Jr.*, Assistant Attorney General (*Richard E. FitzGibbon*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; RAO, J., concurring

LAWRENCE, Judge: The collector of customs classified certain imported electric dry shavers, so-called, as articles having as an essential feature an electrical element in paragraph 353 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 353), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and duty was imposed thereon at the rate of 13¾ per centum ad valorem.

Plaintiff claims that the subject merchandise should be classified as "safety razors" in paragraph 358 of said act (19 U.S.C. § 1001, par. 358), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, which provides a rate of duty of 12½ per centum ad valorem, but not less than 2½ cents each, plus 7½ per centum ad valorem.

The case was submitted for decision upon an agreed statement of facts. The pertinent text reads as follows:

IT IS HEREBY STIPULATED AND AGREED by and between counsel for the parties hereto—

1– That the merchandise the subject of the above-entitled protest is described on the invoice as "SC 7759/08A—Double headed electric dry shavers" and consists of electric dry shavers which were classified as articles having as an essential feature an electric element or device under paragraph 353, Tariff Act of 1930, as modified by the Torquay Protocol T.D. 52739, and assessed for duty thereunder at 13¾ per cent ad valorem, and are claimed to be properly classifiable as "Safety razors" under paragraph 358 of the said act, as modified by the General Agreement on Tariffs and Trade T.D. 51802, and dutiable thereunder at 12½ per cent ad valorem but not less than 2½ cents each and 7½ per cent ad valorem; that the sample of the said electric dry shavers submitted herewith may be received in evidence and marked Exhibit 1; and that electric dry shavers were not produced or known in 1930 and prior thereto.

2– That the said electric dry shavers are used for shaving the beard and are operated by an electric motor enclosed in the casing; that they have two sets of blades and each set, consisting of six blades, is covered by a metal guard to prevent the skin from being cut during the shaving operation.

3– That, except as aforesaid, the said electric dry shavers are the same in the method of operation and in all other material respects as the non-electric

dry shavers the subject of *Morris Friedman* v. *United States*, 40 Cust. Ct. 216, C.D. 1985; and that the record in the said C.D. 1985 may be incorporated in the record in the protest herein.

Paragraph 353 of the Tariff Act of 1930, as modified, by the Torquay protocol, *supra*:

Articles having as an essential feature an electrical element or device, such as electric motors, fan, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

Batteries_____ \* \* \*

 \* \* \* \* \* \* \*

Other \* \* \* _____ 13¾% ad val.

Paragraph 358 of said act, as modified by the General Agreement on Tariffs and Trade, *supra*:

Safety razors, and safety-razor handles and frames\_\_\_\_ 12½% ad val., but not less than 2½¢ each and 7½% ad val.

Plaintiff contends that electric dry shavers are, in fact, safety razors, within the common meaning of that term in said paragraph 358, and relies upon our decision in *Morris Friedman* v. *United States*, 40 Cust. Ct. 216, C.D. 1985. That case related to what was described as "Non-Electric Dry-Shavers." In our opinion, we described their function as follows:

\* \* \* The operation of the article was explained as follows: By pulling a nylon cord, a heavy weighted flywheel is caused to rotate; the flywheel, being geared to a shaft, develops a high speed. Attached to the shaft are four sharp cutting blades, which are covered by a guard to prevent the skin from being cut while in use. As stated by the witness, "The instrument is pressed against the beard; the guard permits the hairs of the beard to engage the blades and they're cut off without injuring the skin."

We then quoted various dictionary definitions of the term "safety razor," as an aid to our understanding of the common meaning of the term, and held that the articles there under consideration did "in character, construction, and use, respond to our conception of the term 'safety razor.'"

In a later case, *Morris Friedman* v. *United States*, 43 Cust. Ct. 324, Abstract 63302, we again held that certain nonelectric dry shavers should properly be classified as safety razors within the purview of said paragraph 358, following the earlier *Friedman* case, *supra*.

However, we are here dealing with an electric dry shaver motivated by an electric motor which clearly brings the article within the purview of paragraph 353 as an article having as an essential feature an electrical element.

In *United States* v. *Dryden Rubber Co.*, 22 C.C.P.A. (Customs) 51, T.D. 47050, our appellate court said, with respect to the scope of said paragraph 353:

\* \* \* In view of the very evident intent of the Congress to gather, generally, various types of electrical devices into this paragraph, it is believed that this machine, if essentially an electrical machine, may properly be considered as of the class to which the stated language of the paragraph refers.

In another portion of its opinion in that case, the court stated that there are two inquiries which must be considered before applying the terms of paragraph 353:

\* \* \* First, is it essentially an electrical article? The electrical feature must be an essential feature, without which the article will not function, normally, for the purposes intended, for, it must be manifest, that if it be not an electrical article, it does not come within the division at all. Second, if it is such an electrical article, is it an article named in the language, or within the class of articles named in this paragraph?

In the case before us, both of the inquiries above propounded must be answered in the affirmative.

The foregoing circumstances lead us to the conclusion that this case is controlled by the decision of our court of appeals in *United States* v. *Electrolux Corporation*, 46 C.C.P.A. (Customs) 143, C.A.D. 718. The merchandise there under consideration consisted of electrical floor polishers which did not contain any electrical heating elements and were chiefly used in the household or home. The court recognized the principle that a use provision, in the absence of other compelling considerations, should prevail over a more general provision. After reviewing a number of cases upon the "doctrine of use" and "exceptions thereto," the court concluded that the provision in paragraph 353 for "articles having as an essential feature an electrical element or device" more closely described an electric floor polisher than the provision for household utensils in paragraph 339.

The Government, in its brief, invites our attention to certain legislative history which supports the conclusion we have reached herein, citing Hearings, House Ways and Means Committee, volume II, schedule C, metals, pages 824–828; Hearings. House Ways and Means Committee 1929, volume III, schedule 3, pages 2173, 2222, 2223; Senate Finance Committee Hearings, volume III, schedule 3, page 509.

Reference is also made by the Government to the 1948 Summaries of Tariff Information on the General Agreement on Tariffs and Trade, volume III, part 3, page 165, pertaining to razors, wherein the following appears:

### Comment

This summary covers three distinct types of safety razors (and parts thereof) : (1) Those designed for thin flexible blades with two sharpened edges, the blade being curved when clamped in the holder; (2) those designed for flat nonflexible blades with one or two cutting edges, the blade being held in the holder rigidly without flexing; and (3) those designed for hollow-ground blades made of forged steel, which have about the same cross section as the blade of a straight razor. The latter are sold in sets with stropping and, sometimes, honing devices;

the blades used in this type of razor are not discarded, but are continued in use for an indefinite period.

Not covered in this summary are straight razors (see separate summary under paragraph 358 on razors (except safety razors and electric shavers and parts) ; electric shavers (see summary on machines with electrical elements, par. 353) ; * * *.

Page 87 of the same reference contains the following data pertaining to electrical articles:

### Comment

Scope of this summary.—Machines covered by the provision in paragraph 353 as "articles having as an essential feature an electrical element or device" include only those in which the electrical feature is essential to the normal functioning of the machines for the purposes intended. * * *

Among the more important articles covered by this summary are electric washing machines, electric refrigerators, electric locomotives, *electric shavers*, * * *. [Italics added.]

The electrical feature of the subject shavers and the reasoning of the court in the *Electrolux* case require that we distinguish the *Friedman* cases, which related to nonelectric shavers.

For the reasons stated, the protest is overruled and judgment will issue accordingly.

### CONCURRING OPINION

RAO, Judge: I concur in the result.